NIEMEYER, Circuit Judge,
concurring:
I am pleased to join Judge Wilkinson’s fine opinion. I write separately only to clarify an implicit argument in the opinion, supra at 284, which, if recognized explicitly, demonstrates conclusively the propriety of relying on Marsh v. Chambers, 463 U.S. 783, 793, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), to dispose of the case before us.
It is well-accepted that the analysis for scrutinizing the government’s own speech under the First Amendment is different from and more relaxed than the analysis for scrutinizing government prohibitions or impositions of speech on the people. See Bd. of Regents of the Univ. of Wis. Sys. v. Southworth, 529 U.S. 217, 229, 120 S.Ct. 1346, 146 L.Ed.2d 193 (2000); id. at 235, 120 S.Ct. 1346 (“Where the [State] University speaks, either in its own name through its regents or officers, or in myriad other ways through its diverse faculties, the analysis likely would be altogether different”). This is so because “when the State is the speaker, it may make content-based choices.” Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 833, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). Similarly, the analysis for scrutinizing the government’s own prayer under the First Amendment is different from and more relaxed than the analysis for scrutinizing government prescriptions or proscriptions of prayer for the people. See County of *289 Allegheny v. American Civil Liberties Union, 492 U.S. 573, 603 n. 52, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (“Legislative prayer does not urge citizens to engage in religious practices, and on that basis could well be distinguishable from an exhortation from government to the people that they engage in religious conduct”) (emphasis added). These distinctions flow from the structure of the Constitution itself, under which “We the People” insist on the prohibition of various governmental intrusions on the people’s liberty.
Thus, when a governmental body engages in prayer for itself and does not impose that prayer on the people, the governmental body is given greater latitude than when the government imposes prayer on the people. When the “people” are involved, the Supreme Court has held that the Establishment Clause “guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith, or tends to do so.” Lee v. Weisman, 505 U.S. 577, 587, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992) (emphasis added) (citations and internal quotation marks omitted). It is a cornerstone principle of our Establishment Clause jurisprudence that “it is no part of the business of government to compose official prayers for any group of the American people to recite as a part of a religious program carried on by government.” Engel v. Vitale, 370 U.S. 421, 425, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962) (emphasis added); see also Weisman, 505 U.S. at 589, 112 S.Ct. 2649 (“The First Amendment’s Religion Clauses mean that religious beliefs and religious expression are too precious to be either proscribed or prescribed by the State”).
But when members of a governmental body participate in a prayer for themselves and do not impose it on or prescribe it for the people, the religious liberties secured to the people by the First Amendment are not directly implicated, and the distinct, more' tolerant analysis articulated in Marsh governs. Marsh holds, as Judge Wilkinson ably articulates in his opinion for the court, that a governmental body may select and say nondenominational prayers for the purpose and benefit of that body so long as the prayers do not “proselytize or advance any one, or ... disparage any other, faith or belief.” 463 U.S. at 794-95, 103 S.Ct. 3330; cf Rust v. Sullivan, 500 U.S. 173, 192-200, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) (holding that the government may control the content of its speech)..
Ever since Marsh, the Supreme Court has continued to recognize the distinction between prayer engaged in by the government for itself and prayer imposed on the people, subjecting the latter form of prayer to heightened scrutiny. In County of Allegheny v. American Civil Liberties Union, for example, the Court explicitly relied on this distinction:
It is worth noting that just because Marsh sustained the validity of legislative prayer, it does not necessarily follow that practices like proclaiming a National Day of Prayer are constitutional. Legislative prayer does not urge citizens to engage in religious practices, and on that basis could well be distinguishable from the exhortation from government to the people that they engage in religious conduct.
492 U.S. at 603 n.52, 109 S.Ct. 3086 (emphasis added) (citation omitted).
Our recent decisions in Mellen v. Bunting, 327 F.3d 355 (4th Cir.2003), and Wynne v. Town of Great Falls, 376 F.3d 292 (4th Cir.2004), are fully-consistent with the distinction made . between legislative prayer and prayer for the people. In Mel-len, we struck down a prayer said at eve *290 ning meals at the Virginia Military Institute, a state college, when the prayer was composed and sponsored by state officials for “the people,” i.e. the students during the meal hour. 327 F.3d at 375. And in Wynne, we struck down a uniquely Christian legislative prayer designed for and participated in by the people. 376 F.3d at 302. In response to the Town Council’s argument in Wynne that its prayer should be approved under Marsh because it was given for the Town Council, not the people, we said:
The Town Council briefly contends that the prayers at issue here were “only and for the benefit of the Council members.” Given the record evidence and unchallenged factual findings of the district court, that contention is simply untenable. The district court found that the Town Council specifically listed the prayers first on its agenda of public business and that citizens customarily participated in the prayers by standing and bowing their heads. Indeed, citizens actively joined in the prayers by declaring “amen” and sometimes “hallelujah” at the conclusion.... Finally in its June 2003 Resolution, the Town Council stated that the “invocation may request divine guidance for the Town of Great Falls and its ... citizens,” (emphasis added), and so itself has recognized that the town’s prayers are not just for council members but for all of the Town’s citizens. Thus, in a very real sense, the Town Council has directed Christian prayers at — and thereby advanced Christianity to- — the citizens in attendance at its meetings and the citizenry at large.
Wynne, 376 F.3d at 301 n. 7 (second emphasis added) (citations omitted).
The undisputed evidence in the case before us readily distinguishes this case from Wynne because the Chesterfield County Board of Supervisors engages in prayer for itself and not for the people. As one of the supervisors testified:
The purpose of an invocation is for the board members to invoke God’s blessing upon our organization, upon our meetings, and that is my understanding as to what the board’s purpose is, is to serve the board, not the individual.
[I]t’s to have God’s blessing invoked on sometimes very contentious hearings. It’s for our benefit.
(Emphasis added).
And this is precisely the type of prayer considered and upheld against an Establishment Clause challenge in Marsh. See 463 U.S. at 792, 103 S.Ct. 3330 (pointing out that the prayer there was “[t]o invoke Divine guidance on a public body entrusted with making the laws”). Because the prayers received and used by the Chesterfield County Board of Supervisors were for the Board alone — to invoke God’s blessing upon that organization — under Marsh, the Board’s selection and use of prayer did not amount to “an ‘establishment’ of religion or a step toward establishment.” Id.